Gordon JENSEN, Plaintiff and
Respondent,

v.

PURE PLANT FOOD INTERNATION-
AL, LIMITED, a corporation,
Defendant and Appellant.

No. 12020.

Supreme Court of South Dakota.

Jan. 5, 1979.

Richard F. Staley, Sioux Falls, for plain-
tiff and respondent.

Mark V. Meierhenry, of Meierhenry, De-
vany & Krueger, Vermillion, for defendant
and appellant.

PORTER, Justice.

## CASE SUMMARY

This is an appeal from the judgment of
the circuit court awarding the plaintiff,
Gordon Jensen, $11,568.09 damages for un-
paid compensation for services rendered by
him to defendant, Pure Plant Food Interna-
tional, Limited (Pure), pursuant to an em-
ployment contract executed by them. Pure
assigns various errors and requests reversal.
We affirm the judgment of the trial court.

## FACTS

Defendant, Pure, is a Canadian corporation engaged in the manufacture and sale of fertilizer, with its principal place of business in Sioux Falls. Plaintiff, Jensen, is a salesman who worked for Pure from July, 1971, until October, 1974. He was hired as a state program manager and was employed by written contract dated July 29, 1971, (the 1971 contract). As a state program manager he sold products directly to customers and had distributors or salesmen who worked under his direction. His territory encompassed South Dakota and Montana. Jensen's contract with Pure provided him with a salary, plus a sales bonus and profit sharing.

On February 5, 1974, Jensen was called to a meeting with Ken McLachlan, president of Pure. Jensen was given a statement of his sales for the 1972–73 fiscal year. He disagreed with the calculations on the statement because he thought he was entitled to a 2% bonus payment on distributor orders, rather than the 1% bonus payment indicated on the statement. McLachlan gave him no answer to his contention concerning the bonus payment, but showed Jensen a new employment contract, backdated to September, 1973, the beginning of the 1973–74 fiscal year, which excluded the profit sharing agreement present in the 1971 contract. Jensen told McLachlan that he would "have to be crazy to sign a thing like that," and walked out of the office.

On March 6, 1974, Jensen was advised by telegram that no additional fertilizer orders would be accepted, but that orders on hand at the head office would be filled. On March 20, 1974, Jensen had an interview with McLachlan to settle Jensen's claim that he was entitled to a 1% sales bonus, $1,017, for distributor sales during fiscal year 1972–73. As a result of the conversation Jensen received a check for $1,000, which carried the words, "full and final settlement of 1973 bonus less deductions." On March 21, 1974, Jensen was asked to meet with Walter McLachlan, who was then a vice president of Pure. McLachlan offered Jensen a new employment contract, which excluded the profit sharing provision of the 1971 employment contract. Jensen commented that the contract was not back-dated and McLachlan agreed. Jensen asked if the new contract would affect his past business for the fiscal year 1973–74; McLachlan said it would not, and Jensen signed it. The new contract (herein called the 1974 contract) terminated August 31, 1974. October 1, 1974, Jensen began working for another company.

In July, 1975, Jensen commenced the lawsuit from which this appeal arises. He alleged that by virtue of the terms of the 1971 employment contract, Pure owed him $25,267 in unpaid compensation for services rendered by him from August 1, 1971, through March 1, 1974. Pure, in turn, filed a counterclaim in the amount of $432.00 for fertilizer allegedly delivered Jensen and not paid for.

The jury returned a verdict for Jensen, awarding him $12,000.09 in damages, and awarded Pure $432.00 in damages pursuant to its counterclaim. Jensen was, therefore, awarded judgment in the amount of $11,568.09 plus costs, from which Pure appeals.

## ISSUES

The issues dispositive of this appeal are as follows:

*Issue One*—Did the trial court err in allowing parol evidence to be considered in determining the terms of the March 21, 1974, contract?

*Issue Two*—Did the trial court err in denying Pure's motions for a directed verdict under the doctrine of waiver based upon the 1974 contract and accord and satisfaction?

## DECISION

*Issue One*

We conclude that the trial court did not err in allowing parol evidence to be considered in determining the terms of the March 21, 1974, contract.

The employment contract of 1971 provided for a sales bonus and profit or loss

sharing. The provisions that governed these benefits were as follows:

> The Company agrees to pay the Manager a "Sales Bonus" based on paid up business during the fiscal year of the Company and according to the schedule outlined in "Pure Policy"

*PROFIT OR LOSS SHARING*

The State or Provincial Program Manager will receive a Profit Bonus or will forfeit Sales Bonus based on the following formula;

BUDGETED
NET PROFIT

NO LOSS      10%      NO SHARE

For each one percent (1%) increase or decrease on the Manager's Budgeted Net Profit, the Manager will receive or forfeit ten percent (10%) of his total earned Sales Bonus.

Should Manager's Net Profit be five percent (5%) or lower, Manager will forfeit entire year end Sales Bonus payment.

In contrast to the 1971 contract, the 1974 contract had no provision for profit or loss sharing and the sales bonus provision was as follows:

> The company will pay the Manager a sales bonus, on the net sales paid up business, within the Managers own division, (providing that the Managers division is operating in a profit position according to the sales budget figures on booked orders, issued by the company at the end of each month.) Sales Bonus payable on the 15th. of the month following payment of the order in full according to the following schedule:
>
> $ 1 — 200,000          2%
> $ 201,000 & Over      3%

In addition to the fact the 1974 contract had no provision for profit or loss sharing, it contained the following clauses:

> All previous agreements, contracts or understandings with reference to the employment of the Manager of Pure Plant Food or as compensation for such employment are hereby cancelled, it being agreed that this agreement of the parties hereto with reference to the employment and compensation of the Manager by Pure Plant Food; all promises, undertakings, representations, agreements and understandings with reference to such employment and compensation being merged in this agreement. ["cancellation clause"]

> This agreement supersedes all other agreements.

> It is the intention of the company to set aside a portion of the profits of the company for distribution to employees of the company. At this writing a plan is under consideration by the Board of Directors of the company, when completed each employee will be advised of the plan.

Jensen contends that in spite of the "cancellation clause" in the 1974 contract, and the $1,000 payment of March 20, 1974, he is entitled to the profit sharing as provided by the 1971 contract. Pure disagrees and argues that the 1974 contract is the final expression of the profit sharing negotiations between Pure and Jensen. Pure also contends that the "cancellation clause" of the 1974 contract cancels any unpaid profit sharing from previous years. At trial, the court allowed testimony concerning conversations between Ken and Walter McLachlan and Jensen, which took place prior to and at the time Jensen signed the 1974 contract. Pure contends that the testimony was inadmissible parol evidence because Jensen used it to add additional terms to the contract. We conclude that the testimony at issue was properly admitted in this case.

The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties. . . . If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties.

*Huffman v. Shevlin*, 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955). Parol or extrinsic

evidence may not be admitted to vary the terms of a written instrument or to add to. or detract from the writing. When the writing is uncertain or ambiguous, however, such evidence is admissible to explain the instrument. *Christiansen v. Strand*, 81 S.D. 187, 132 N.W.2d 386 (1965). "In other words, evidence is resorted to where the ambiguity may be dispelled to show what they meant by what they said, but not to show that the parties meant something other than what they said." *Id.* at 193, 132 N.W.2d at 389. "A contract is ambiguous when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists as to which of two or more meanings is the proper one." *Boyer v. Iowa High School Athletic Association*, 260 Iowa 1061, 1069, 152 N.W.2d 293, 298 (1967). And see *Piechowski v. Case*, S.D., 255 N.W.2d 72 (1977). Whether the language of a contract is ambiguous is ordinarily a question of law for the court. *Employers Liability Assur. Corp. v. Morse*, 261 Minn. 259, 111 N.W.2d 620 (1961).

We conclude that the 1974 contract was ambiguous, and that the trial court properly admitted parol evidence to clarify the contract terms. After reading through the "cancellation clause" a genuine uncertainty exists as to whether it affects profit sharing benefits accruing prior to March 21, 1974. Although the clause states that all previous agreements are cancelled, the question still remains whether the parties intended that Jensen not share in the profits from that day forward or whether they meant to cancel profit sharing to which Jensen was already entitled. It was necessary, therefore, for the trial court to admit testimony to show what the parties meant when they cancelled Jensen's employment compensation agreements. The parol evidence at issue was testimony given by Jensen at trial. He testified that when he met with Ken McLachlan on February 5, 1974, he was shown another employment contract backdated to September of 1973. This contract excluded profit sharing. When asked on direct examination how he responded to the new contract, Jensen replied:

A I said, "I'd have to be crazy to sign a thing like that."

Q Did you elaborate?

A To the extent that I had $150,000 worth of business written on the pretense of the old agreement. If I signed that contract I was giving away $20,000 just like that.

Q Did you get any reply from Ken?

A I finally walked out.

Jensen also testified about his meeting with Walt McLachlan on March 21, 1974, as follows:

Q . . . Now, as part of your conversation with Walt McLachlan on the 21st of March, you say you were shown a contract?

A Yes.

Q Was it dated when you first saw it?

A No, it wasn't.

Q Did you make any comment relevant thereto, to Walt?

A I commented that "This contract is not back-dated."

Q What did he say?

A He responded that "No, it isn't." "Well," I said, "the last one I saw was."

Q Did you make any other comments with reference to the lack of a date?

A I said I made a comment that it was not dated and "Will it be dated?" And he said it could be dated today.

Q All right. Did you ask any further questions with reference to the proposed contract?

A I asked if it would be affecting my past business to date for the year 1974 '73 '74, and he said, "No, it would not."

. . . . .

Q Well, did you sign the contract?

A I did sign the contract, yes, . . .

The testimony at issue served to clarify the terms of the contract, not add to them, and was properly admitted.

*Issue Two*

We conclude that the trial court did not err in denying Pure's motion for a directed

verdict under the doctrines of waiver and accord and satisfaction based upon the contract of March 21, 1974.

■ Pure argues that the 1974 contract contains a clear and total waiver of the prior contract because the "cancellation clause" discussed earlier totally waived all past obligations of the parties. Pure therefore contends that the trial court should have directed a verdict in its favor as a matter of law. When reviewing the denial of the motion for a directed verdict this court must view the evidence in the light most favorable to the non-movant giving him the benefit of all reasonable inferences that may be drawn therefrom. *Lang v. Burns*, 77 S.D. 626, 97 N.W.2d 863 (1959). "A verdict by direction is justified only when the evidence conclusively establishes the right of the moving party. . . . This occurs when the evidence is so one-sided that reasonable minds can reach no other conclusion." *Id.* at 630, 97 N.W.2d at 866. We conclude that there was sufficient evidence in the record in support of Jensen's position for the trial court to allow the case to go to the jury. Jensen testified that he had a discussion with Walter McLachlan in August, 1973, during which he told McLachlan that he could not afford to work for Pure without a profit sharing agreement. Several times during the fall of 1973 Walter McLachlan assured him that either the profit sharing would stand or there would be something similar arranged to compensate him. In February, 1974, when Ken McLachlan offered Jensen a new backdated contract which eliminated profit sharing Jensen rejected it, stating that he would have to be crazy to sign it because he would be "giving away $20,000 just like that." When Jensen finally signed the new contract on March 21, 1974, it was after Ken McLachlan had assured him that his past business for the fiscal year 1973–74 would not be affected. We find, after considering this evidence and all of the reasonable inferences that may be drawn therefrom, that reasonable minds could conclude that the 1974 contract did not totally waive all past obligations of the parties. The trial court properly denied Pure's motion for a directed verdict on that basis.

■ Pure contends that the $1,000 check, dated March 20, 1974, was a complete satisfaction of Jensen's claims for fiscal year 1972–73, and therefore the trial court should have granted Pure's motion for a directed verdict for fiscal year 1972–73 on the basis of accord and satisfaction. Jensen testified that when he met with Ken McLachlan on March 20, 1974, they discussed their dispute over his entitlement to a 2% versus 1% bonus on distributor sales made in fiscal year 1972–73. Jensen claimed Pure still owed him $1,017 for that bonus. As a result of the conversation Jensen was presented with the check for $1,000. On cross-examination Ken McLachlan recognized his previous deposition testimony, which contained the following exchange:

Q Making reference now to the $1,000 settlement check, "Q Does that indicate then that Gordon was paid an additional $1,000 to settle his argument that he was entitled to an extra 1% of the distributor sales for the year '72–'73? A I believe that's right." Were you asked that question in reference to the $1,000 settlement check and did you give that answer?

A I believe I did.

After considering this evidence and the reasonable inferences which may be drawn therefrom, we find that reasonable minds could conclude that the $1,000 check was only for the unpaid 1% bonus on distributor sales for fiscal year 1972–73, and that it was not a full settlement for fiscal year 1972–73 profit sharing benefits. The trial court therefore properly denied Pure's motion for a directed verdict on that basis.

## OTHER CONTENTIONS

At the settlement of instructions, Pure objected to Instruction 5. We read the record objection as a reiteration of the claim that parol evidence should not have been received concerning the 1974 contract as stated under *Issue One*. Pure's objection must be overruled.

Pure proposed instructions concerning (1) a presumption of honesty and fair dealing

in business transactions, (2) past performance as satisfaction of a contractual obligation, and (3) the effect of an overpayment by Pure to Jensen in one year upon Pure's obligation to Jensen in a later year. We have carefully reviewed all instructions given and proposed. We find no persuasive case law cited by Pure to support its claim that prejudicial error was committed by the trial court in instructing the jury.

### CONCLUSION

We find no merit to Pure's numerous assignments of errors. We affirm the judgment awarding Jensen $11,568.09 damages plus costs.

All the Justices concur.