**Donald A. HAGGAR, Owner/Trustee of Haggar's Action Realty Trust Account, Plaintiff and Appellant,**

**v.**

**John OLFERT, John Broek, Forrest Hubers and Milton Proctor, Defendants and Appellees.**

**Nos. 14513, 14717 and 14916.**

Supreme Court of South Dakota.

Considered on Briefs April 9, 1985.

Decided May 7, 1986.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for plaintiff and appellant.

T.F. Martin and Richard Helsper of McCann, Martin & Mickelson, Brookings, for defendants and appellees.

MORGAN, Justice.

This action was commenced by Donald A. Haggar, a realtor doing business as Haggar's Action Realty (Haggar) to recover for his trust account on a promissory note executed by the defendants individually and given by them to Haggar on behalf of Magnum Enterprises Inc. (Magnum), a corporation of which they were the sole stockholders, and which promissory note in the amount of $500,000 represented the down payment on a real estate transaction. Haggar sought recovery of the $450,000 balance on the note together with interest and the defendants counterclaimed for $50,000 paid on said note and the jury found against Haggar on both issues in favor of the defendants. Haggar appeals and we affirm.

The underlying transaction involved the sale of the Diamond Ring Ranch situated in Haakon County, South Dakota, by the Armstrong family through Haggar, as their realtor.

John Olfert, John Broek, Forrest Hubers and Milton Proctor incorporated Magnum for investment purposes. On July 21, 1981, Magnum executed an offer and agreement to purchase the Diamond Ring Ranch for $10,800,000. The offer included a provision for a $500,000 earnest money deposit by a promissory note which was to be payable as follows: $50,000 on August 3, 1981, and the balance of $450,000 due on August 14, 1981. The offer also contained a provision for liquidated damages in the amount of $500,000. The Armstrongs insisted on a personal promissory note and the stockholders agreed and on July 22, 1981, signed the promissory note payable to Haggar's Trust Account, which document is the subject of this action. The initial $50,000 payment was made by Hubers on August 10, 1981, and when the group failed to make the payment of the balance on August 14, 1981, an addendum was drawn on August 28, 1981, changing the payment schedule for the balance on the note as follows: $250,000 due August 31, 1981, and $200,000 due on September 11, 1981, with the closing date on the sale transaction set for November 2, 1981.

At the time that the transaction was entered into by Magnum, they were in the process of putting together sufficient real estate to trade for certain gems then owned by Berja, a Montana investment group. Haggar was apparently aware of this background information. On August 31, Haggar was contacted and advised by Broek that Magnum had agreed to let Berja step in and buy the ranch directly.

Broek went to Pierre, South Dakota, and met with Haggar regarding Berja's buying the property. At that point, Haggar drafted a document identified as Exhibit 8, which is the point of controversy in this transaction. Pursuant to telephonic directions from one of Haggar's agents, Hubers also prepared and executed a document identical to Exhibit 8. Within forty-eight hours, Berja had executed an offer and agreement to purchase the ranch at the same price. Berja, however, failed to close on the sale on the date scheduled and a new sales contract was negotiated and agreed upon wherein the sale price was reduced to $8,594,000 and Berja agreed to assume certain indebtedness. The sellers also allowed Berja to mortgage the property for $3,500,000, from which Berja made a down payment of $1,500,000. When one of the partners in Berja filed a Chapter 11 bankruptcy, it became apparent that the Berja transaction would not go through and the sellers regained possession of their property through the Bankruptcy Court with the mortgage indebtedness against the property substantially increased.

We realign the issues raised by Haggar in appeal # 14513 as follows: (1) Did the trial court err in admitting parol evidence with regard to the document Exhibit 8; (2) did the trial court err in failing to direct a verdict for Haggar at the close of defendant's evidence or to grant judgment n.o.v. after the verdict; and (3) whether the trial court's instruction number 10 is an erroneous statement of the law. The document in issue, Exhibit 8, is set out as follows:

It is mutually agreed between the parties that the 20 day notice of default in the Offer and Agreement to Purchase entered into by Eugene Armstrong, Vern Armstrong, Margaret Armstrong and Diamond Ring Ranch, Inc. as Seller and Magnum Enterprises, Inc. dba Magnum Farms as Purchaser is hereby waived. Seller is authorized to negotiate with others for sale of the property to reduce or eliminate the liquated (sic) damages.

We first examine the issue of whether the trial court erred by allowing the defendant to introduce parol evidence to suggest that there was an accord and satisfaction, novation, release, or cancellation of the obligation. This issue requires a two-part analysis: (1) Is the instrument, Exhibit 8, ambiguous? (2) If so, is the particular evidence admissible?

In *Jensen v. Pure Plant Food Intern., Ltd.*, 274 N.W.2d 261 (S.D.1979), we discussed this analysis at length. As to the first question, we came up with the following rules: " 'The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties....' " 274 N.W.2d at 263 *quoting Huffman v. Shevlin*, 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955).

When the writing is uncertain or ambiguous, however, [parol or extrinsic] evidence is admissible to explain the instrument.... 'A contract is ambiguous when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists as to which of two or more meanings is the proper one.' ... Whether the language of a contract is ambiguous is ordinarily a question of law for the court.

*Jensen*, 274 N.W.2d at 264 (citations omitted). To the foregoing, we might add our long-standing rule that on appeal we are not required to apply the clearly erroneous rule to the trial court's findings on ambiguity, inasmuch as we can read the instrument ourselves. *Geo. A. Clark & Son, Inc. v. Nold*, 85 S.D. 468, 185 N.W.2d 677 *cert. denied* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); *Ayres v. Junek*, 247 N.W.2d 488 (S.D.1976).

If and when the instrument is found by the court to be ambiguous, then the admission of parol or extrinsic evidence shall be governed by these rules:

If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties.... Parol or extrinsic evidence may not be admitted to vary the

terms of a written instrument or to add to or detract from the writing. . . . '. . . [e]vidence is resorted to where the ambiguity may be dispelled to show what they meant by what they said, but not to show that the parties meant something other than what they said.' *Jensen,* 274 N.W.2d at 263–64 (citations omitted). To these we again add our longstanding rule that ambiguities are decided against the draftsman. *City of Sioux Falls v. Henry Carlson Co.,* 258 N.W.2d 676 (S.D.1977).

 We therefore look first to the instrument itself which in essence states:

It is mutually agreed between the parties that the 20 day notice of default in the Offer and Agreement . . . is hereby waived. Seller is authorized to negotiate with others for sale of the property to reduce or eliminate the liquadated (sic) damages.

From our reading of the instrument, the first sentence is a clear and unequivocal waiver of the notice of default. The second sentence, however, raises more questions than it answers. The most important one to this discussion being: What, if anything, eliminates the liquidated damages? We find that the instrument is ambiguous and we therefore affirm the trial court's determination that the instrument was ambiguous and that parol and extrinsic evidence was admissible to determine the intention of the parties in drafting, executing, and accepting the instrument. We will examine the evidence that was admitted as to its propriety under the second prong of the test in our discussion of the next issue. Before proceeding directly to the second issue, we pause to note that by their pleadings in this action Magnum admitted the execution of the promissory note but denied that it was enforceable and interposed three affirmative defenses based upon Exhibit 8: (1) accord and satisfaction; (2) novation; and (3) release. The trial court properly instructed the jury that: "[T]he party who asserts the affirmative of an issue must prove that issue by a preponderance of the evidence . . . The plaintiff has the burden of proving that the obligations represented by the promissory note . . . was extinguished." *See Clancy v. Callan,* 90 S.D. 115, 238 N.W.2d 295 (1976); *Lang v. Burns,* 77 S.D. 626, 97 N.W.2d 863 (1959).

Haggar argues that Magnum failed to adduce any legally competent evidence to sustain these affirmative defenses and that in the absence of such evidence his motion for directed verdict or his motion for judgment n.o.v. should have been sustained as a matter of law. Resolution of this issue requires a determination of whether, under the legally competent evidence presented at trial, the document can reasonably be characterized as an accord and satisfaction, a novation, or a release. If the evidence was insufficient, these defenses should not have been submitted to the jury.

 In reviewing the denial of a motion for directed verdict, this court must examine the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Koupal & Anton, Inc. v. Wieczorek,* 375 N.W.2d 639 (S.D.1985); *Smith v. Halverson,* 273 N.W.2d 146 (S.D.1978); *Lytle v. Morgan,* 270 N.W.2d 359 (S.D. 1978). The reviewing court must determine whether there is any substantial evidence to sustain the cause of action and, if there is sufficient evidence to allow reasonable minds to differ, the denial of the motion to direct a verdict was correct and appropriate. *Koupal, supra; Johnson v. John Deere Co.,* 306 N.W.2d 231 (S.D. 1981); *Smith, supra; Lytle, supra.* A motion for judgment n.o.v. is considered under the same standard of review as a motion for directed verdict. *Fajardo v. Cammack,* 322 N.W.2d 873 (S.D.1982).

 We first examine the record with respect to the issue of novation. Novation is the substitution by contract of a new obligation for an existing one. SDCL 20–7–5. It may be accomplished by substituting a new debtor in place of the old one, with an intent to release the old debtor from his obligation. SDCL 20–7–7.

"In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed. The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case, then, is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances. The existence of such an intention may, of course, be found, even though there is nothing positive in the agreement. In other words, the intention to substitute one contract for another so as to constitute a novation need not be expressed, but may be inferred from the circumstances...."

*Hyde v. Hyde*, 78 S.D. 176, 183, 99 N.W.2d 788, 791 (1959) *quoting* 39 Am.Jur. *Novation* § 21. *See also City Nat. Bank of Huron, S.D. v. Fuller*, 52 F.2d 870 (8th Cir.1931).

██ Magnum urges that Haggar accepted Berja's purchase agreement as a substitute for Magnum's. Essential elements of novation are: (1) a previous valid obligation, (2) agreement of all parties to the substitution under a new contract based on sufficient consideration, (3) extinguishment of the old contract, and (4) the validity of the new contract. *Moody v. Bogue*, 310 N.W.2d 655 (Iowa App.1981); *National Prem. Budget Pl. Corp. v. Siegel Agcy., Inc.*, 43 Mich.App. 29, 204 N.W.2d 30 (1972). Clear and convincing evidence is required in order to justify setting a written contract aside and holding it abandoned or substituted by subsequent parol evidence or contract. *Duffy v. Park Terrace Supper Club, Inc.*, 295 Minn. 493, 206 N.W.2d 24 (1973).

Magnum argues that the Armstrongs' approval of the sale to Berja indicates an intent to substitute them for Magnum and release the defendant from the original purchase agreement. Certainly Haggar and the Armstrongs could not sell to Berja if they had a contract with Magnum. The evidence disclosed that the Armstrongs in fact entered into two different contracts with Berja. The first contract was for identical purchase price as in the Magnum offer and the second was for a lesser price but Berja agreed to assume certain liabilities. In this latter agreement, Armstrongs also permitted Berja to mortgage the property for some $3,500,000 which they in turn received as down payment.

██ There can be little question that the actions of the sellers and Haggar in negotiating not one but two contracts were relevant evidence as the subsequent acts of the parties to clarify the writing. As previously noted, the intent to effect a novation may be inferred from the circumstances surrounding the creation of a new obligation. *Hyde, supra.*

██ In the case at bar, circumstances surrounding the execution of the August 31 agreement and the parties subsequent actions evince an intent to substitute Berja as the new debtor, and release Magnum from its obligations. At the time of the waiver of notice agreement, Haggar and the Armstrongs knew that Magnum was going to default on the property. Furthermore, Vern Armstrong testified that after September 1 he was not relying upon Magnum to effectuate a sale, but was instead relying entirely upon "the Montana people" (Berja). Additionally, the ranch was sold to Berja within forty-eight hours of Broek's signing the waiver of notice of default. Finally, Haggar testified that well prior to August 31 he knew Berja would ultimately be purchasing the property from Magnum. We conclude that the August 31 agreement, coupled with a new purchase agreement for the ranch entered into two days later, constituted a novation whereby Berja was substituted on the contract debt for Magnum.

Having determined Magnum met its burden to allow submission to the jury the

theory of novation, we need not review Haggar's claim that the accord and satisfaction and release defenses should not have been submitted to the jury. "If at least one proper issue was submitted to the jury, and a general verdict ... is returned, the reviewing court will assume that the verdict was returned upon the issue properly submitted." *Koupal,* 375 N.W.2d at 641. *See also Mid-America Marketing Corp. v. Dakota Industries, Inc.,* 289 N.W.2d 797 (S.D.1980). Moreover, since instruction number 10 of which Haggar complains dealt solely with accord and satisfaction, we likewise deem it unnecessary to review that issue.

With respect to appeal # 14717, Haggar urges that the trial court abused its discretion by refusing to set aside the previous judgment and grant him a new trial on the grounds of newly discovered evidence. Haggar filed this motion pursuant to SDCL 15–6–60(b), requesting the trial court vacate the judgment and order a new trial based upon newly discovered evidence.

Regarding appeal # 14513, Haggar's notice of appeal was filed on February 27, 1984. He subsequently filed his SDCL 15–6–60(b) motion with the trial court on August 23, 1984. The trial court denied the motion. Even though Haggar had filed a notice of appeal, the trial court had jurisdiction to deny the motion, and we may review its decision. *Menno State Bank v. City of Menno,* 297 N.W.2d 460 (S.D.1980).

■ Haggar made his motion to vacate the judgment based upon newly discovered evidence. He claims that evidence that Hubers "bilked" insurance clients in Iowa out of investment monies is relevant to Hubers' credibility, and should be presented before a jury in a new trial.

■ A motion to vacate a judgment under SDCL 15–6–60(b) is within the trial court's sound discretion. *Rogers v. Rogers,* 351 N.W.2d 129 (S.D.1984). This court will not overturn the trial court's decision unless there has been an abuse of discretion. *Rogers, supra.* Normally, the statute provides for extraordinary relief which may be

granted only upon a showing of exceptional circumstances. *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509 (8th Cir.) *cert. denied* —— U.S. ——, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (interpreting Fed.R.Civ. Proc. 60(b) upon which SDCL 15–6–60(b) is patterned.) *See Menno State Bank, supra.*

■ When asking for relief under SDCL 15–6–60(b) on the claim of newly discovered evidence, the moving party must establish: "(1) the evidence was discovered after trial; (2) [the moving party] exercised due diligence to obtain the evidence for trial; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new verdict." *Rosebud Sioux Tribe,* 733 F.2d at 515.

■ The basis of Haggar's motion lay in a June 17, 1984, article in the *Des Moines,* Iowa *Register.* In this article, Hubers admitted he had embezzled over one million dollars from insurance and investment clients in Iowa. One of the reasons Hubers gave for his actions was that he needed the money to help "shore up" an 820-acre grain operation in South Dakota that was doing badly. He had purchased this property in 1976.

As noted in *Rosebud Sioux Tribe, supra,* the newly discovered evidence cannot be simply for impeachment purposes. In his motion and his brief, Haggar argues that the evidence was relevant to Hubers' credibility, and is necessary for impeachment purposes. This is precisely the situation in which newly discovered evidence does not warrant vacating a judgment under SDCL 15–6–60(b). The trial court did not abuse its discretion in denying the motion.

Appeal # 14916 also involves a motion to vacate the judgment, pursuant to Rule 60(b). Haggar filed this second Rule 60(b) motion on February 4, 1985. The motion was based upon Hubers' guilty pleas in Iowa on thirteen counts of theft, which were related to the admissions made by

Hubers in the newspaper article discussed above. The trial court denied the motion.

Under Rule 60(b), a motion to vacate the judgment based upon newly discovered evidence must be made within one year of entry of the judgment. SDCL 15-6-60(b). *See Estate of Sedlacek v. Mount Marty Hosp. Assn*, 88 S.D. 333, 218 N.W.2d 875 (1974). The judgment against Haggar was docketed on January 26, 1984, and notice of entry was sent to Haggar on that same day. Haggar's motion was filed February 4, 1985, more than one year after entry of the judgment. Moreover, the evidence was to be used for impeachment purposes, which does not warrant vacating the judgment. *Rosebud Sioux Tribe, supra*. The trial court did not abuse its discretion in denying the motion.

Accordingly, the judgment of the trial court and its order denying the motion to vacate the judgment are affirmed.

All the Justices concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.