**GOLD PAN PARTNERS, INC.,**
**Plaintiff and Appellant,**

v.

**Julie K. MADSEN, Defendant**
**and Appellee.**

**No. 17173.**

Supreme Court of South Dakota.

Argued Nov. 28, 1990.

Decided May 1, 1991.

George Bangs, Joseph M. Butler, Patrick Duffy, Bangs, McCullen, Butler Foye & Simmons, Rapid City, for plaintiff and appellant.

George Beal, Beal Law Office, Rapid City, for defendant and appellee.

WUEST, Justice.

Gold Pan Partners, Inc. appeals an order of the circuit court which vacated an order confirming the sale of certain real estate of the estate of Thomas W. Madsen. We affirm.

Thomas W. Madsen died testate on May 14, 1989. He was survived by his wife and three sons from a previous marriage. His wife, Julie Madsen, was appointed executrix of the estate. Included in the assets of the estate was Gold Pan Pizza, a retail pizza parlor business located on Main Street, Deadwood, South Dakota. This property was formerly a gasoline service station. The decedent and his wife operated the business together from the time of their marriage in November 1983 until the date of his death.

The executrix tried to sell the property. In September 1989, she discussed selling the business with Mr. John Gable. A draft Agreement to Purchase the business was prepared by Mr. Gable's attorney. According to her testimony, the executrix presented the draft to the estate attorney [1] for review and approval. He denies seeing the purchase agreement until after its execution. The court found he did, in fact, review or should have reviewed the agreement prior to its execution. The Agreement to Purchase was signed by the executrix and Mr. Gable on September 28, 1989. She signed the agreement personally and as Executrix of the Estate.

The agreement contained a provision that it was subject to confirmation by the court. It provided for a purchase price of $125,000, with $1,000 paid down and the balance paid upon closing. It also contained a pro-

---

1. None of the attorneys on appeal was attorney for the Madsen estate.

vision whereby the executrix permitted Mr. Gable access to the property for testing the underground fuel tanks located on the property. In the event the test results were not satisfactory to Mr. Gable, he had the right to terminate the Agreement and be refunded his down payment. It further provided the executrix continue working at Gold Pan Pizza for 60 days after the sale. Mr. Gable knew Gold Pan Pizza was property of the estate.

The estate attorney had the property appraised in contemplation of an estate sale. It was appraised at $125,000.

In October 1989, the attorney sent to each of decedent's three sons, legatees under decedent's will, a Consent and Waiver of notice of hearing. The legatee sons were advised they could appear and contest the contemplated sale of Gold Pan Pizza as not being a reasonable sum, but that by signing the Consent and Waiver they would be agreeing to the sale price and waiving the notice of hearing. The sons were further counseled that the decision on whether to sell the business was that of the executrix and were each advised to sign a Consent and Waiver and return it to the estate attorney. He also contacted the executrix and instructed her to contact decedent's sons and instruct them to each sign a Consent and Waiver.

However, in November 1989, Tim Madsen, one of decedent's sons, advised the estate attorney that he was not satisfied with the sale price and would not sign a Consent and Waiver. Mr. Madsen returned to Deadwood in December 1989, and discussed the estate sale with the attorney. Mr. Madsen expressed dissatisfaction with the sale price and inquired of the attorney what would happen if he refused to sign a Consent and Waiver. The attorney advised Mr. Madsen that by not signing a Consent and Waiver the estate would be sued for failing to perform the purchase agreement.[2] Notwithstanding such advice, Mr.

Madsen refused to sign the Consent and Waiver.

Subsequently, Mr. Madsen met with his stepmother, the executrix, and proposed contacting the buyer, Mr. Gable, directly and requesting him to increase the purchase price. The executrix then telephoned the estate attorney regarding contacting Mr. Gable and the attorney advised the executrix that such an effort would be futile because the contract price was firm and binding upon the estate. Mr. Madsen then returned to the attorney's office and signed the Consent and Waiver. On December 26, 1989, the executrix also signed a Consent and Waiver and a Petition for Order Confirming Sale prepared by the estate attorney. Prior to signing the Petition, the executrix again expressed her dissatisfaction with the sale price of the real estate, but was again instructed by the attorney that she had no choice but to proceed with the sale or the estate would be sued. The Order Confirming Sale was entered on December 27, 1989.

Meanwhile, Mr. Gable had a preliminary site evaluation of the property prepared. At the recommendation of the testing company, further site testing was conducted whereby monitoring wells were installed on the property. Mr. Gable also conducted an independent appraisal of the property; the property was appraised at $210,000 as of December 21, 1989. On December 22, 1989, Mr. Gable's attorney contacted the attorney for the estate and expressed Mr. Gable's intention to complete the sale. Mr. Gable then assigned his interest in the sales contract to Gold Pan Partners, Inc.

The attorney for the estate never advised the executrix that a verified return of proceedings on all probate sales of real estate must be made pursuant to SDCL 30–22–54. No such verified return of proceedings of sale was ever filed in this case, nor was a copy of the purchase agreement with Mr. Gable ever filed or reported to the circuit

---

**2.** This was poor advice. The contract contained a provision that it was subject to confirmation by the court. If the usual probate procedures had been followed, anybody could have raised the bid 5% at the confirmation hearing and the court could have ordered a new sale or held an auction sale at the confirmation hearing. *See* SDCL 30–22–59 and *In re Poulsen's Estate,* 71 S.D. 149, 22 N.W.2d 734 (1946). *See also* SDCL 30–22–58 which provides any person interested in the estate may file written objections to confirmation of sale.

court judge prior to entry of the Order Confirming Sale on December 27, 1989. Furthermore, the attorney for the estate utilized the Consent and Waiver procedure at the suggestion of Mr. Gable's attorney.

The value of commercial real estate on Main Street, Deadwood increased substantially after the advent of legalized gambling in Deadwood on November 1, 1989. The evidence fully and totally substantiates the fact that the estate real estate could have been sold for a price in excess of $125,000. It was substantiated by the testimony of a realtor who had a prospect ready, willing and able to buy the real estate for $250,000 cash. This offer was communicated to the attorney by the executrix. The executrix also received a written offer to purchase the property for $200,000 cash. Indeed, the attorney for the estate admitted that had the purchase agreement of Mr. Gable gone to a public confirmation hearing, the real estate would have been sold for a price in excess of $125,000.

The trial court found the real estate confirmation proceedings were defective in a number of aspects: there was no verified return of sale as required by SDCL 30–22–54; the Petition for Order Confirming Sale [3] signed by the executrix and the Order Confirming Sale presented to the court were all prepared by the estate attorney without input from the executrix and did not relate the executrix' personal position and belief; the Petition for Order Confirming Sale did not set forth the particulars of the agreement between the executrix and Mr. Gable, nor was the Agreement to Purchase attached, and the Petition recited the property was sold to Gold Pan Partners, Inc., not a party to the purchase agreement; the Agreement did not set forth any assignment rights of Mr. Gable. Thus, the trial court had no basis on which to make a determination that the confirmation of sale should be finalized and an order confirming sale entered.

The trial court also found that the advice and representations made by the estate attorney to the executrix and the estate legatees was totally inadequate and defective.[4] He found the waivers of the heirs and legatees of the estate were obtained under misapprehension of law and under an environment of coercion in that their failure to sign the waivers would subject the estate to suit. He further found the legatees were never advised of their rights under the South Dakota Probate Procedures pertaining to sales of estate real property. The attorney for the estate was aware of the rights of the legatees to a hearing on confirmation, but never advised any of the heirs, including the executrix. They were never advised that at a confirmation hearing the court is authorized to auction the real estate to the highest bidder for cash.[5] The estate attorney failed to

---

**3.** The statutes relating to sale of property in probate proceedings do not provide for "Petitions for Orders Confirming Sales." Rather, they refer to "return of sale." *See* SDCL 30–22–53 to 30–22–59, inclusive.

**4.** Counsel may have become involved in representing conflicting interests by advising the executrix in her personal capacity and advising the sons. We recognize estate attorneys often find themselves being "peacemakers." Nevertheless, they should exercise caution to avoid becoming compromised in the representation of conflicting interests.

**5.** SDCL 30–22–59 provides:
Upon the hearing the court must examine the return and witnesses in relation to the same, and if the proceedings were unfair, or the sum bid be disproportionate to the value of the property, or if it appear that there may be obtained a sum exceeding such bid at least ten percent, or at least five percent where the bid is more than ten thousand dollars, exclusive of the expenses of sale, the court may vacate the sale and direct another to be had, for which notice must be given and the sale conducted in all respects as if no previous sale had taken place; if there be made to the court in writing by a responsible person an offer of ten percent more than the amount named in the return, or five percent more where the amount named is in excess of ten thousand dollars, it is in the discretion of the court to accept such offer and confirm the sale to such person, or to order a new sale.
The court may also in its discretion receive, consider, reject or accept higher and better offers and bids beyond the percentages of increase as herein provided, and if accepted, confirm the sale to the person making the highest or best offer or bid.

advise the court of the substantial increase in the real estate's value and that better offers for the property had been received. The executrix was never advised of her fiduciary obligation to inform the court of the increase in value of the property. The court held the estate attorney was neglectful and such neglect was not excusable.

However, the court found the inexcusable neglect of the estate attorney should not be imputed to the executrix: she was persistent and consistent in her expressions to the estate attorney of dissatisfaction over the sale price of the real estate; throughout the course of the estate proceedings, she sought and followed the advice of her attorney; she had a right to place her faith in him and had a right to be dubious; upon the entry of the Order Confirming Sale, she acted promptly to set aside the confirmation. Thus, under the circumstances, she acted as a prudent person would be expected to act.

▮▮▮ Based on these findings of fact, the court vacated the Order Confirming Sale under SDCL 15–6–60(b)(1), (4), (5), and (6), and under its authority as a Court of Equity, unencumbered by SDCL 15–6–60(b). Gold Pan Partners, Inc. (Gold Pan), the assignee of Mr. Gable and appellant in this appeal, contends the trial court's decision was a clear error of law and must be reversed.

SDCL 15–6–60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

.    .    .    .    .

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) Any other reason justifying relief from the operation of the judgment.

... Section 15–6–60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court.

The purpose of SDCL 15–6–60(b) is to "preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." *Peterson v. La Croix*, 420 N.W.2d 18, 19 (S.D.1988) (*citing Rosebud Sioux Tribe v. A. & P. Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.), *cert. denied* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), *on remand* 874 F.2d 550 (8th Cir.1989)). This statute provides for extraordinary relief upon a showing of exceptional circumstances. *Clarke v. Clarke*, 423 N.W.2d 818, 820 (S.D.1988); *Haggar v. Olfert*, 387 N.W.2d 45, 51 (S.D. 1986). A motion for relief based upon SDCL 15–6–60(b) is addressed to the sound discretion of the trial court and will not be disturbed on appeal except for abuse. *Gustafson v. Gustafson*, 453 N.W.2d 852, 854 (S.D.1990); *Clarke*, 423 N.W.2d at 820; *Overvaag v. City of Dell Rapids*, 319 N.W.2d 171, 173 (S.D.1982). The trial court's discretion is to be exercised liberally in accord with legal and equitable principles in order to promote the ends of justice. *City of Lemmon v. U.S. Fidelity & Guaranty Co.*, 293 N.W.2d 433 (S.D.1980); *Kuehn v. First Nat'l Bank in Sioux Falls*, 90 S.D. 96, 238 N.W.2d 490 (1976).

The trial court used a broad brush in citing sections (1), (4), (5) and (6) of SDCL 15–6–60(b). We agree section (6) is applicable, but express no opinion as to the other sections.

▮▮▮ The defects in the estate sale confirmation proceedings, in combination with the confused legal advice given the executrix and the decedent's sons, provide sufficient reason to set aside the Order Confirming Sale under section (6). The court had a duty to see that the sale was legally made and fairly conducted, that the sum bid was not disproportionate to the value of

the property, and that a greater sum could not be obtained.[6] It was known to the estate attorney that the executrix had received offers to purchase the property significantly greater than the price under the purchase agreement. Nevertheless, the estate attorney stated in the Order Confirming Sale: "the sale is for a sum not disproportionate to the value of the property" and "a greater sum cannot be obtained." The estate attorney testified these recitals were not accurate, but were written to conform the Order to statutory requirements.

■ It is the settled rule, relief under SDCL 15–6–60(b) is available in attorney negligence situations only if the client can affirmatively show either (1) that the attorney's negligence was excusable or (2) that the client herself was not negligent. *First Federal Savings & Loan Ass'n v. Strub,* 427 N.W.2d 836, 837 (S.D.1988); *Midcontinent Broadcasting Co. v. AVA Corp.,* 329 N.W.2d 378, 380 (S.D.1983) (*citing Ackerman v. Burgard,* 79 S.D. 119, 124, 109 N.W.2d 10, 12 (1961)). The record supports the trial court's finding that the neglect of the estate attorney was unexcusable. However, we will not attribute the actions of the estate attorney to the executrix so as to deny her equitable relief. The executrix had a right to place her faith in her attorney and follow his advice. She was not adequately counseled on her fiduciary duty to the estate, the estate beneficiaries, and the court, and was not advised of South Dakota probate procedures. Although she should not have signed documents she did not read or understand, she did not act unreasonably in relying upon the advice of her attorney. Under the circumstances of this case, she was not negligent.

The trial court did not abuse its discretion and is affirmed.

**6.** SDCL 30–22–61 provides in pertinent part:

If it appears to the court that the sale was legally made and fairly conducted, and that the sum bid was not disproportionate to the value of the property sold, and that a greater sum, as specified in § 30–22–59, cannot be

MILLER, C.J., HENDERSON, J., and MORGAN, Retired Justice, concur.

SABERS, J., dissents.

AMUNDSON, Justice, not having been a member of the Court at the time this case was argued, did not participate.

SABERS, Justice (dissenting).

The majority's result-oriented treatment tends to brush past the clear and settled rule that relief under SDCL 15–6–60(b) is available in attorney negligence situations *only if* the client can affirmatively show either (1) that the attorney's negligence was excusable or (2) that the client herself was not negligent. *First Fed. Sav. & Loan Ass'n v. Strub,* 427 N.W.2d 836, 837–838 (S.D.1988); *Midcontinent Broadcasting Co. v. AVA Corp.,* 329 N.W.2d 378, 380 (S.D.1983).

Since the majority states and the "record supports the trial court's finding that the neglect of the estate attorney was [not] excusable," this neglect cannot be classified as "excusable" and (1) above does not apply. That would leave, as the only alternative, a showing that Julie Madsen was guilty of no negligence herself. It is difficult to conclude that she has affirmatively shown this, given that she signed the Petition for Order Confirming Sale despite her grave misgivings. In fact, she was the one who supplied all of the "better offer information" to her attorney. Therefore, the information and the acts of her attorney are imputed to her and binding upon her. *Ackerman v. Burgard,* 79 S.D. 119, 124, 109 N.W.2d 10, 12 (1961). Moreover, despite this information and these misgivings, she failed to ask the advice of another attorney in the months prior to the entry of the order, although she did seek out a second opinion less than a week afterwards. This was nothing more than a bad case of seller's doubt. Therefore, neither (1) nor (2) above apply.

obtained, or if an increased bid, as specified in such section be obtained and accepted by the court, the court must make an order confirming the sale and directing conveyance to be executed.

The same analysis applies equally to the three sons of the decedent because they were aware of all relevant information, and, despite similar misgivings, grudgingly acquiesced in the court proceedings.

The fact that the judgment from which Julie seeks relief was not entered against Julie, but in her favor and upon her petition, is also troubling. *See Dym v. North American Carbide Corp.*, 95 F.R.D. 371, 372 (E.D.Pa.1982) (*citing* 7 *Moore's Federal Practice* ¶ 60.24[5] ). To read Rule 60(b) broadly enough to grant a party relief from a *favorable* judgment which the party previously *pursued* opens wide the door to abuse of the rule by those who simply change their mind about what they want after it is too late.

Because the circumstances of this case cannot be shoehorned into SDCL 15–6–60(b) * without doing violence to the rule, Julie's remedy to recover any claimed loss is limited to an action against her former attorney.

I would reverse the trial court.

---

\* The majority concedes (at p. 8391) that "the trial court used a broad brush in citing sections (1), (4), (5) and (6) of SDCL 15–6–60(b)." The majority "express[es] no opinion" on sections (1), (4) and (5) but agrees with the trial court that section (6) "is applicable." However, as explained above, Julie is not entitled to any relief under section (6) on these facts either.