UNITED STATES of America ex rel. SHAKOPEE MDEWAKANTON SIOUX COMMUNITY, Plaintiff,

v.

PAN AMERICAN MANAGEMENT COMPANY; New England Entertainment Company: Dennis Courtney d/b/a New England Entertainment Company; Alan Arbogast d/b/a New England Entertainment; John Panetta d/b/a New England Entertainment Company; Michael Forschette d/b/a New England Entertainment Company; Little Enterprise; Alfred Estrada, Defendants.

LITTLE SIX ENTERPRISES, a partnership of Pan American Management Co. and Regal Enterprises, Inc., Plaintiff,

v.

SHAKOPEE MDEWAKANTON SIOUX COMMUNITY; Leonard Prescott; Susan Totenhagen; Allen Ross; Dave Anderson; John Doe and Jane Doe, Defendants.

Civ. Nos. 4–85–231, 4–85–399.

United States District Court,
D. Minnesota,
Fourth Division.

July 18, 1986.

Reid Peyton Chambers, Sonosky, Chambers & Sachse, Washington, D.C., and Larry B. Leventhal and James Townsend, Minneapolis, Minn., for Shakopee Mdewakanton Sioux Community.

George F. McGunnigle, Leonard, Street & Deinard, Minneapolis, Minn., and Aidan D. Jones, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Washington, D.C., for Pan American Intern. Management Co., New England Entertainment Co., John Panetta, Little Six Enterprises, Alfred Estrada.

Peter C. Monson, Dept. of Justice, Washington, D.C., and Mary Carlson, Asst. U.S. Atty., Minneapolis, Minn., for Secretary of Interior.

DIANA E. MURPHY, District Judge.

These cases, and the related case of *Little Six Enterprises v. Hodel,* 4–85–880, arise from a dispute over management agreements for bingo facilities operating on tribal trust lands of the Shakopee Mdewakanton Sioux Community (the "Community"). The three cases and the background of the dispute are discussed at some length in this court's Memorandum Opinion and Order of August 9, 1985, published at 616 F.Supp. 1200. In that order the court granted summary judgment in

favor of defendants in 4–85–880 and, in 4–85–231, declared management agreements between Little Six Enterprises (Little Six) and the Community null and void. Little Six appealed.

The Court of Appeals issued its opinion on April 30, 1986, finding that it lacked jurisdiction in 4–85–231 and that the appeal from 4–85–880 was premature. *See* 789 F.2d 632. This court then convened a Fed. R.Civ.P. 16 conference on June 27, 1986. Disposition of the cases was discussed and arguments were heard on pending motions. Those motions are now before the court. Little Six seeks modification of the August 9 order under Fed.R.Civ.P. 60(a) or entry of judgment under Fed.R.Civ.P. 54(b). The Community seeks dismissal of all counterclaims in 4–85–231 and all claims in 4–85–399.

### I. Little Six's Motion for Relief Under Rule 60(a) or Rule 54(b)

In the August 9, 1985 order, this court granted the Community's motion for partial summary judgment in 4–85–231 and declared the management agreements null and void. The court did not grant any injunctive relief. On appeal, Little Six argued that the court's order effectively enjoined it from continuing its work on the bingo operations and that the Court of Appeals should therefore take jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (conferring jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions"). The Court of Appeals, finding the district court's order indicated that "its intent was only to declare the agreements void," and not to issue an injunction, dismissed the appeal for lack of jurisdiction.

■ Little Six seeks to return to the Court of Appeals immediately and, towards that end, asks this court to "clarify" its order pursuant to Fed.R.Civ.P. 60(a), which permits the court to correct "[c]lerical mistakes ... arising from oversight or omission." As the court explained at the hearing, it did not believe that it had to reach the issue of injunctive relief under circum-

stances where it believed the parties would follow the direction of the declaratory relief. Thus, there was no oversight or omission, and amendment under Rule 60(a) would be inappropriate.

■ In the alternative, Little Six seeks relief pursuant to Rule 54(b), which provides that

the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

It is well settled that 54(b) order "should not be entered routinely or as an accommodation to counsel." *Burlington Northern Railroad Co. v. Bair*, 754 F.2d 799, 800 (8th Cir.1985) (citations omitted). Rule 54(b) certification conflicts with the strong judicial policy of avoiding piecemeal and interlocutory appeals, *id.*, and the court should grant it only where "some damages of hardship or injustice through delay ... would be alleviated by immediate appeal." *Hayden v. McDonald*, 719 F.2d 266, 268 (8th Cir.1983) (citations omitted). Caution is particularly appropriate in this case, where the Court of Appeals rejected Little Six's invitation to review not only the declaratory relief in 4–85–231, but also the dismissal of the complaint in 4–85–880. It appears most appropriate to resolve the unsettled issues before further appellate review. In light of this, and of the likelihood that certification would only add to the time necessary to resolve these disputes, certification is unwarranted.

### II. The Community's Motion to Dismiss

Little Six has brought a number of claims and counterclaims which the Community seeks to dismiss. Little Six counterclaimed, in 4–85–231, alleging (1) breach of the management agreement, (2) unjust enrichment, (3) promissory estoppel, (4) quantum meruit, (5) breach of contract requiring injunctive relief, (6) tortious interference with contractual relations, and (7) tortious breach of contract. In 4–85–399,

Little Six alleges (1) breach of contract, (2) tortious interference with contractual and business relations,[1] (3) defamation, and (4) a claim for punitive damages.

Defendants concede that those claims based on the management agreements must fail unless the court reconsiders its decision declaring the agreements null and void. Since the court sees no reason to reconsider this decision, counterclaims (1), (5), and (7) should be dismissed. For the same reason, count (1) in 4–85–399 and that portion of count (2) that alleges tortious breach of contract should be dismissed.[2] To the extent that count (2) alleges tortious interference with business relations, however, it need not be dismissed solely because the agreements are null and void.

■ The Community also asserts that sovereign immunity protects it and its officials and employees from all the counterclaims. "Indian tribes have always been considered to have an immunity from suit similar to that enjoyed by the federal government," *Namekagon Development Co. v. Bois Forte Reservation Housing Authority*, 517 F.2d 508, 510 (8th Cir.1975). *See also, Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). But, a tribe may waive its sovereign immunity. *E.g., American Indian Agricultural Credit Consortium Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir.1985); *Fontenelle v. Omaha Tribe*, 430 F.2d 143 (8th Cir.1970). Moreover,

> when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising

out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's suit, but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind.

*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir.1982) (quoting *Fredrick v. United States*, 386 F.2d 481, 488 (5th Cir.1967)). The remaining counterclaims in 4–85–231 appear to meet the waiver test: they arise out of the same transactions and occurrence as the Community's suit, seek relief of a similar kind of nature, and appear to seek an amount not in excess of the Community's claim.[3] Thus, they should not be dismissed at this time.

■ The remaining claims in 4–85–399 raise somewhat different issues because they seek relief against individuals rather than the Community. Leonard Prescott, Susan Totenhagen, and Alleen Ross, are or were tribal officials; all are members of the Community. Dave Anderson is not a member, but a consultant hired by the Community.[4] However, most, if not all, of the events which give rise to the complaint allegedly took place before the individual defendants became officials or employees of the Community. Sovereign immunity does not bar a suit against individuals for acts committed or statements made by them in their individual capacities. *See, e.g., Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (tribal official not protected by the tribe's immunity from suit.)[5]

---

**1.** The 4–85–399 claim for tortious interference asserts that individual defendants tortiously interfered with contracts between Little Six and the Community. The 4–85–231 counterclaim, on the other hand, concerns a loan issued by a bank not party to this action.

**2.** Counts 2 through 4 of 4–85–399 seek relief against the individual defendants, but not the Community. The dismissal of count 1 is effectively a dismissal of the entire case against the Community itself.

**3.** The counterclaims may stand only to the extent that they seek recoupment of any amount

awarded to the Community, *e.g., Complaint of American Export Lines, Inc.*, 568 F.Supp. 956 (S.D.N.Y.1983).

**4.** Little Six asserts that John Doe and Jane Doe represent unidentified members of the so-called "Prescott Faction" of the Community. These unidentified persons have presumably not been served with notice of this action and are accordingly not before this court.

**5.** It is not clear whether the complaint asserts that Prescott, Totenhagen, Ross, or Anderson committed any of the allegedly unlawful acts

### III. Case Management

After hearing argument on the motions, the court discussed case management issues and the possibility of settlement with the parties. They are seriously interested in working towards settlement and agreed that discussions with a Magistrate would be useful. The court granted the parties an opportunity to propose a settlement procedure, and a letter from both sides proposing a procedure was received on July 10, 1986. The court found the proposal generally acceptable and appointed United States Magistrate Bernard P. Becker to conduct settlement negotiations. The court and the parties agree that litigation should be stayed for a reasonable period to give them an opportunity to concentrate on settlement. Therefore, the court need not set deadlines or address other case management issues at this time.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of Little Six Enterprises for relief under Fed.R.Civ.P. 60(a) or for entry of final judgment under Fed.R.Civ.P. 54(b) is denied.

2. The motion of plaintiff Shakopee Mdewakanton Sioux Community to dismiss the counterclaims in Civ. No. 4–85–231 is granted insofar as it seeks dismissal of counterclaims 1, 5, and 7. The motion is denied in all other respects.

3. The motion of defendants Shakopee Mdewakanton Sioux Community to dismiss count 1 of 4–85–399 is granted, and the complaint in that action is dismissed against the Community.

4. The motion of defendants Prescott, Totenhagen, Ross, and Anderson, to dismiss the complaint in 4–85–399 is granted insofar as it seeks dismissal of count 1 and that part of count 2 which alleges tortious interference with contractual rights. It is denied in all other respects.

after becoming officials or employees of the Tribe. To the extent that it does, they are protected by the Community's immunity if they acted in their official capacities and within the authority granted them. The Community's officials and agents may be sued, however, "to recover damages for [their] personal actions, ... [if the] judgment sought will not require action by the sovereign or disturb the sovereign's property." *Rochester Methodist Hospital v. Travelers Insurance Co.,* 728 F.2d 1006 (8th Cir.1984) (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 687, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949)). To the extent that the Community has waived its immunity, its officials would also be affected.