**ROSEBUD SIOUX TRIBE, Appellant,**

v.

**A & P STEEL, INC., Appellee.**

**No. 88–5051.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 4, 1988.

Decided May 10, 1989.

Rick Johnson, Gregory, S.D., for appellant.

David A. Gerdes, Pierre, S.D., for appellee.

Before LAY, Chief Judge, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

The Rosebud Sioux Tribe appeals a district court[1] order requiring the Tribe to pay A & P Steel damages in the amount of $51,584.50, plus prejudgment interest of $66,818, as part of a retainage fee still due and owing under their contract. We affirm in part and reverse in part.

## I. BACKGROUND

The details of the dispute between the Tribe and A & P Steel are set forth in *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 511–15 (8th Cir.) (*Rosebud I*), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). A summary of the facts is briefly restated below.

In 1977, Edward Driving Hawk, chairperson of the Rosebud Sioux Indian Tribe, and Michael Strain, attorney for the Tribe's subsidiary, Tribal Land Enterprises, obtained a two million dollar grant for irrigation development under the Emergency Drought Assistance Act of 1977. A contract was formed between the Tribe and A & P Steel for construction of an irrigation facility. The contract contained several guarantees and warranties concerning the

---

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

quality of materials and workmanship and provided that, upon completion of each irrigation pivot system, the Tribe would inspect the system and, if acceptable, pay for that system less a retainage fee.

In June of 1978, the Tribal Council passed two resolutions after learning of alleged fraud and corruption surrounding the irrigation project. The resolutions (1) formed an investigatory committee and (2) suspended "sign-offs"[2] on the irrigation systems and finalization of the contract until the investigation was completed. However, the Tribe's representative continued sign-offs until July 5, when all sign-offs were finished and the project was completed. Subsequently, Driving Hawk tried to pay A & P Steel the total retainage fee of $51,584.50, which was the balance due under the contract. The check was returned for insufficient funds and the balance has never been paid.

The Tribe then sued A & P Steel, seeking damages for breach of contract, breach of warranties, conspiracy, and fraud. A & P Steel counterclaimed for the remainder of the retainage fee still due and owing. At trial, the construction company won on its counterclaim, but this court reversed and remanded for a new trial. *Rosebud I*, 733 F.2d at 523. Before the second trial commenced, the Tribe settled its claims with A & P Steel. In the settlement agreement, A & P Steel specifically reserved the counterclaim for trial. At the second trial, which is the subject of this appeal, A & P Steel was again awarded damages on its counterclaim.

The district court noted that the Tribe's contract claims were dismissed with prejudice by the settlement agreement. The court thus narrowed its analysis to the issues of whether the contract had been performed by A & P Steel and whether the Tribe had accepted the performance. The court resolved both issues in A & P's favor.

## II. DISCUSSION

### A. Sovereign Immunity

■ The Tribe attempts to invoke sovereign immunity as protection from A & P Steel's counterclaim. While sovereign immunity has long been enjoyed by Indian tribes, such immunity may be waived, but the waiver must be unequivocally expressed, and may not be implied. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); *Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670–71 (8th Cir. 1986); *American Indian Agric'l Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1377–81 (8th Cir. 1985).

■ One method in which express waiver may be made is by virtue of a provision allowing the tribe "to sue or be sued," found in the tribe's corporate charter. *Fontenelle v. Omaha Tribe*, 430 F.2d 143, 147 (8th Cir.1970). The Rosebud Sioux Tribe has expressly waived its sovereign immunity in such a fashion. The Tribe's corporate charter explicitly states in paragraph 5(i) that the Tribe shall have the power "[t]o sue and to be sued in courts of competent jurisdiction within the United States." Appellee's Brief App. C, *Rosebud II* (No. 88–5051).

Furthermore, when a sovereign nation such as an Indian tribe commences a lawsuit, " 'it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit.' " *United States ex rel. Shakopee Mdewakanton Sioux Community v. Pan Am. Management Co.*, 650 F.Supp. 278, 281 (D.Minn. 1986) (quoting *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir. 1982) (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1967))). The counterclaims of the defendant must seek relief of a similar nature to that sought by

---

**2.** "Sign-offs" were made by a representative of the Tribe as each irrigation pivot was completed. The representative was obligated to check the pivot to see that it was in working order and then "sign off," recording the fact that the pivot

was working. At that time, the Tribe would then become owner of the irrigation pivot, but such partial acceptance did not relieve A & P Steel of its warranty obligations under the contract.

the plaintiff and in an amount not in excess of the plaintiff's claim. *Pan Am.*, 650 F.Supp. at 281. The Rosebud Sioux Tribe initiated this lawsuit. Because A & P Steel's counterclaim arises out of the same contractual transaction, seeks similar monetary relief, and is for an amount less than that sought and recovered by the Tribe, we conclude that the Tribe has specifically waived its immunity to the counterclaim.

### B. Waiver of Defenses

The stipulation for dismissal stated that the "terms and conditions of the settlement" were that A & P Steel's insurer agreed to pay the Tribe $200,000 "to settle any and all claims of the Rosebud Sioux Tribe" against A & P and its insurer, provided that the counterclaim of A & P Steel against the Tribe was "not affected by this settlement, settlement does not include this counterclaim, and the counterclaim is to be left pending for trial." Reflecting this agreement, the district court judgment of dismissal stated that the order "does not affect the counterclaim of A & P Steel."

The Tribe claims that it did not intend to waive any defenses to the counterclaim via this agreement. Arguing that the scope and effect of a compromise agreement generally depend on the parties' intent, the Tribe contends that the intent of the settlement agreement was to preserve all issues of the counterclaim, including defenses articulated in the Tribe's reply, for the second trial. The Tribe asserts that the district court failed to consider these defenses.

■ The Tribe's defenses to the counterclaim include breach of contract and breach of warranty. The district court accurately stated that these *claims* of the Tribe were dismissed with prejudice upon filing of the stipulation of settlement. Under the doctrine of claim preclusion, a final judgment on the merits bars relitigation of all grounds for *recovery* that were available to the parties previously. *In re Kapp*, 611 F.2d 703, 707 (8th Cir.1979). Thus, any setoff or counterclaim asserted by the Tribe would be precluded from relitigation because the settlement agreement dismissed the Tribe's claims with prejudice.

■ The district court, however, never explicitly held that the Tribe "waived" its "defenses" to A & P's counterclaim. Logic dictates that defenses to a counterclaim should be available to a plaintiff when the counterclaim is specifically preserved for trial by a settlement agreement.

Assertions of breach of contract and warranty are intertwined with the question of substantial performance of the contract. During the trial, the district court admitted all the evidence which the Tribe presented with respect to these matters. We conclude that the district court considered the Tribe's allegations of breach of contract and warranty in its analysis of substantial performance by A & P. Consequently, any comment by the district court which may have implied that such defenses were waived was made in a different context or, at most, constituted harmless dictum.

The Tribe also asserts the defenses of fraud and misrepresentation. For similar reasons to those stated above, these defenses would not be automatically precluded by the settlement agreement. However, the district court considered the evidence pertaining to these defenses and explicitly found that the evidence did not support claims of fraud or bribery. Because these claims were raised solely as defenses at the second trial, the burden of proof for those defenses was properly allocated to the Tribe. As with the claims of breach of warranty and contract, all evidence relating to fraud and misrepresentation was allowed and considered by the district court. The court concluded that the Tribe did not meet its burden, and we do not consider that finding to be erroneous.

### C. Substantial Performance

The district court focused its opinion on whether A & P Steel performed the contract and whether the Tribe accepted the performance. On the issue of performance, the court found that each of the thirty irrigation pivots completed at least one full revolution after delivery, and in fact the pivots had operated from approximately six to sixty-two hours by the time

the sign-offs were made.[3] The court also found that the system was a good system, and any problems which arose due to the location of the irrigation pivots had no bearing on the question of A & P Steel's performance. The district court concluded that the contract was fully performed by A & P Steel.

The law of South Dakota does not mandate that a construction contract be fully performed for the builder to recover a judgment for the contract price, but rather, requires only that the contractor render "substantial performance." *Dixon v. Nelson*, 79 S.D. 44, 107 N.W.2d 505, 507 (1961). Here, the district court held not only that the contract was substantially performed, but indeed, that it was *fully* performed.

In South Dakota, the question of substantial performance of construction contracts is considered essentially factual. *Van Den Hoek v. Bradwisch*, 273 N.W.2d 152, 154 (S.D.1978). If doubt exists, then the question of substantial performance is for the trier of fact; if the inferences are certain, the question is a matter of law. *Potter v. Anderson*, 85 S.D. 142, 178 N.W. 2d 743, 745 (1970); *Dixon*, 107 N.W.2d at 507.

In this case, much doubt and many discrepancies existed in the evidence brought by the parties before the court. The case was heard without a jury, so the district judge resolved the issue of substantial performance while sitting as a trier of fact. Findings of fact cannot be overturned by this court unless clearly erroneous, Fed.R. Civ.P. 52(a), and we cannot say that the district court's conclusion was clearly erroneous. Thus, we agree that the contract,

at a minimum, was substantially performed by A & P Steel.

The district court initially addressed the issue of acceptance by noting that acceptance may be implied or waived if no objection about defective performance is made within a reasonable time. *See Havens Steel Co. v. Randolph Eng'g Co.*, 613 F.Supp. 514, 527 (W.D.Mo.1985), *aff'd*, 813 F.2d 186 (8th Cir.1987). In addition, the contract required the Tribe to give notice of unsatisfactory performance to A & P Steel with "reasonable promptness."

■ The district court found that the Tribe did notify A & P Steel of defects upon delivery and that A & P remedied these defects, but there was no evidence to substantiate any of the additional defects alleged by the Tribe in their original action. The court concluded that, thus, the Tribe's conduct implied acceptance of performance.[4] Again, we cannot say that the district court's findings of fact are clearly erroneous. We agree that, because the Tribe did not object to the defects complained of in this action within a reasonable period of time, as required both by law and by the contract, the Tribe implied its acceptance of A & P Steel's performance.

### D. Prejudgment Interest

■ In addition to awarding A & P Steel $51,584 as the retainage fee, the district court also ordered the Tribe to pay interest on that amount computed from June 23, 1979. Although we agree that interest should be paid by the Tribe, we hold that the proper date to commence computation

---

**3.** The Tribe has commented that the sign-offs do not constitute a release of liability according to the opinion of this court when the case first came to us on appeal. *See Rosebud I*, 733 F.2d at 519. However, as A & P's counsel correctly pointed out at oral argument, the sign-offs do show evidence of substantial performance. Furthermore, as we stated in *Rosebud I*, the sign-offs represented partial acceptance of A & P's performance. *Id.* at 520.

**4.** The Tribe argued that they did not accept performance by virtue of the fact that a final certificate of completion was never issued. The district court effectively dismissed this argument by noting that such a certificate was impli-

edly waived by the Tribe when Driving Hawk admitted at trial that the retainage amount was due and that he had delivered a check for that amount to A & P. Driving Hawk also had completed a form for the bonding company, indicating that the contract was "fully completed" and performance was accepted on July 5, 1978. The court also noted that the final certificate of completion was not a condition precedent to recovery of the retainage amount because the contract did not make it an essential term, as it had with other conditions. We find the logic of the district court on this issue persuasive.

of that interest is March 13, 1986, the date the parties settled the Tribe's claims against A & P Steel.

Section 21–1–11 of the South Dakota statutes allows an award of prejudgment interest on contractual claims such as A & P Steel's for damages which are certain or capable of being made certain. S.D.Codified Laws Ann. § 21–1–11 (1987); *Winterton v. Elverson,* 389 N.W.2d 633, 639 (S.D. 1986). An award of prejudgment interest is precluded, however, if the damages remain uncertain until determined by the fact-finder. *Hanson v. Funk Seeds Int'l,* 373 N.W.2d 30, 36 (S.D.1985). *See also Heer v. State,* 432 N.W.2d 559, 561–62 (S.D.1988).

The case law of South Dakota holds that, in the case of a construction contract, a builder may recover the contract price where he or she has substantially complied with the contract, though unintentional slight defects caused by inadvertence may exist. *Dixon,* 107 N.W.2d at 507 (citations omitted). The amount recovered will be the contract price less the damages sustained by such defects, *id.,* because the owner receives an offset for defective workmanship, which amounts to the actual cost of making the structure conform to the contract. *Reif v. Smith,* 319 N.W.2d 815, 817–18 (S.D.1982).

Until the time of settlement, the amount due A & P Steel remained uncertain. Although A & P could recover its retainage fee if substantial performance was found, that amount would be lessened by any offset for damages sustained by construction defects. The question of the existence and value of such defects would not be resolved until trial, thus making the actual amount to be recovered uncertain and unascertainable until trial.

As noted in part II.B. of this opinion, claim preclusion prevented the Tribe from asserting any setoff claims after the date of settlement, because those claims had been resolved and consequently were dismissed with prejudice. As of March 13, 1986, A & P Steel's claim for its retainage fee could no longer be offset by the Tribe's claims of defective workmanship. Al-

though the question of liability for the retainage fee remained for trial, the amount of that fee became a sum certain. Consequently, computation of interest should commence as of that date.

### III. CONCLUSION

For the reasons stated above, we affirm the award of $51,584.50 to A & P Steel, but we modify the judgment for prejudgment interest and order computation of such interest to commence March 13, 1986.