In re Karen M. STROM, a/k/a Karen M. Olson, a/k/a Karen M. Strom Olson.

PALATINE NATIONAL BANK OF PALATINE, ILLINOIS, a National Banking Association, Appellant/Cross-Appellee,

v.

Karen M. STROM, a/k/a Karen M. Olson, a/k/a Karen M. Strom Olson, Appellee/Cross-Appellant.

Nos. 89-5558, 89-5559.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1990.

Decided Jan. 4, 1991.

Rehearing and Rehearing En Banc Denied Feb. 15, 1991.

Seth M. Colton, St. Paul, Minn., for appellant/cross-appellee.

Joseph A. Nilan, Minneapolis, Minn., for appellee/cross-appellant.

Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Palatine National Bank (Palatine) brought suit against Karen M. Strom (Strom) in bankruptcy court seeking to enforce a claimed lien on real property (the Carlton Property) in Strom's bankruptcy estate. The bankruptcy court[1] found Palatine had no lien on the property. The court also awarded attorney fees and costs to Strom per Palatine's agreement to be contingently liable for them. Palatine appealed both rulings. On appeal, the district court[2] affirmed the bankruptcy court's ruling that there was no lien and reversed the award of attorney fees and costs. Palatine then appealed the ruling as to the lien, and Strom cross-appealed the disallowance of attorney fees and costs. For reasons to be stated, we affirm the district court's ruling

as to the lien and reverse and remand its ruling on attorney fees and costs.

## I. FACTS

Strom and Kenneth Olson (Olson) were married in August of 1978. Soon after the marriage, Olson transferred to Strom 500 shares of stock in the Carlton Bloomington Dinner Theatre, Inc. (CBDTI) for $500.00, the amount Olson had paid for the stock. The primary asset held by CBDTI was real estate known as the Carlton Property. The Carlton Property is registered, or Torrens, property under Minnesota law. Strom then purchased the Carlton Property from CBDTI by assuming the mortgage on the property.

Palatine obtained a total of four judgments against Olson in 1980 and 1984. In an effort to enforce some of these judgments, Palatine filed a notice of lis pendens against the Carlton Property on March 27, 1985, and commenced an action in district court against Olson, Strom, CBDTI, and other individuals and entities. Strom's Chapter 11 petition on January 20, 1987 stayed the action against her.

Palatine initiated this action against Strom in bankruptcy court on December 1, 1987, asserting that the judgment against Olson created a lien against the Carlton Property. During this litigation, Palatine failed to attend a scheduled pretrial conference. As a result, the bankruptcy court issued an order dismissing the matter. Palatine moved to vacate the dismissal in accordance with Fed.R.Civ.P. 60(b). The court granted Palatine's motion subject to two conditions. First, Palatine had to pay Strom $300.00 for the expense incurred preparing for the conference Palatine failed to attend. Second, Palatine had to agree to pay attorney fees and costs incurred by Strom on and after the date of the order if Palatine failed to establish that it had a valid lien on the Carlton Property. Palatine agreed, but objected to the condi-

---

**1.** The Honorable Robert J. Kressel, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

**2.** The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

tions. The action was then reinstated and proceeded to trial.

In the bankruptcy court, Palatine made two arguments supporting its claimed lien against the Carlton Property. First, Palatine argued that its judgment against Olson created the judgment lien against the Carlton Property which was enforceable despite Olson's allegedly fraudulent transfer of the property to Strom. Second, Palatine argued that its claimed lien arose as a direct result of Olson's fraudulent conveyance of the Carlton Property to Strom.

The bankruptcy court found that Palatine's judgment never attached to the Carlton Property. Therefore, Palatine had no enforceable rights in that property arising from its judgment against Olson. The court's reasoning was based upon Minn. Stat. § 548.09, which creates a judgment lien only against property owned by the judgment debtor. The court found that the Carlton Property was never owned by Olson, so Palatine's judgment against Olson never attached to the Carlton Property.

The bankruptcy court also noted that Minn.Stat. § 548.09 required the judgment to be filed pursuant to Minn.Stat. § 508.63 before it became a lien against registered property. Because the Carlton Property was registered property, and because Palatine made no effort to register its judgment against Olson in accordance with Minn. Stat. § 508.63, the court found Palatine was not entitled to a lien against the Carlton Property even if Palatine's judgment had the potential to affect the property.

The bankruptcy court also found against Palatine on its claim of fraudulent transfer. The court found that Palatine failed to establish any fraudulent conveyance of the property. Therefore, Palatine was not entitled to a lien on the property.

The bankruptcy court later issued an order directing Palatine to pay Strom $34,058.75 for attorney fees and costs. Palatine appealed the court's finding of no lien and the order to pay attorney fees and costs.

The district court affirmed the bankruptcy court's ruling as to the lien, but for reasons different from those given by the

bankruptcy court. The district court assumed without deciding that Palatine's judgment against Olson reached the Carlton Property. Nevertheless, Palatine did not obtain a judgment lien upon the property because it failed to abide by Minn.Stat. § 548.09. That statute, as mentioned, requires a judgment to be filed pursuant to Minn.Stat. § 508.63. Section 508.63 requires any person claiming a lien on registered property to file with the registrar of titles "a certified copy of the judgment, together with a written statement containing a description of each parcel of land in which the judgment debtor has a registered interest and upon which the lien is claimed." The district court found that Palatine failed to file a certified copy of the judgment with the registrar of title. Therefore, it did not meet the filing requirements set out in Minn.Stat. § 548.09 and Minn.Stat. § 508.63. As a result, Palatine did not have a lien against the Carlton Property.

In addressing the issue of attorney fees and costs, the district court held that, in general, courts may only use Rule 60(b) relief to place the parties in the position they were in before the default. In this case, the district court believed that the bankruptcy court abused its discretion by awarding prospective attorney fees and costs in addition to the attorney fees and costs incurred preparing for the conference which Palatine failed to attend. Therefore, the district court affirmed the award of $300.00, representing the cost to Strom to prepare for the missed conference and reversed the award of $34,058.75, representing Strom's attorney fees and costs incurred after the order to dismiss the action was vacated.

## II. JUDGMENT LIEN

█ As noted, to obtain a lien on registered property a judgment creditor must satisfy the requirements of Minn.Stat. § 548.09 and Minn.Stat. § 508.63. Section 548.09 states, in relevant part,

[E]very judgment requiring the payment of money shall be docketed by the court administrator upon its entry....

From the time of docketing the judgment is a lien, in the amount unpaid, upon all real property in the county then or thereafter owned by the judgment debtor, but it is not a lien upon registered land unless it is also filed pursuant to section[ ] 508.63 [3] . . . .

Section 508.63 provides in part,

No judgment requiring the payment of money shall be a lien upon registered land, except as herein provided. Any person claiming such lien shall file with the registrar a certified copy of the judgment, together with a written statement containing a description of each parcel of land in which the judgment debtor has a registered interest and upon which the lien is claimed, and a proper reference to the certificate or certificates of title to such land. Upon filing such copy and statement, the registrar shall enter a memorial of such judgment upon each certificate designated in such statement, and the judgment shall thereupon be and become a lien upon the judgment debtor's interest in the land described in such certificate or certificates. . . . *In every case where an instrument of any description or a copy of any writ, order, or decree, is required by law to be filed or recorded in order to create or preserve any lien, writ, or attachment upon unregistered land, such instrument or copy, if intended to affect registered land, shall, in lieu of recording, be filed and registered with the registrar. In addition to any facts required by law to be stated in such instruments to entitle them to be filed or recorded, they shall also contain a reference to the number of the certificate of title of the land to be affected. . . .* [Emphasis supplied.]

The sole issue Palatine raises in its appeal is the district court's ruling that Palatine failed to satisfy § 508.63. In support of Palatine's contention that it met this requirement, Palatine asserts that § 508.63 does not require a judgment creditor to file a copy of its judgment in order to obtain a judgment lien on registered property. Instead, Palatine interprets the above-emphasized portion of the statute as setting out an alternative to the filing requirement contained in the preceding portion of the statute. It is the latter section of the statute that Palatine claims to have complied with so as to obtain a lien on the Carlton Property. Specifically, Palatine claims that its notice of lis pendens constitutes the proper instrument to record its judgment against Olson so as to create a judgment lien against the Carlton Property. It could not simply give the registrar a copy of its judgment against Olson because he did not hold a registered interest in the property. Had Palatine presented a copy of its judgment to the registrar, Palatine contends it would not have been filed. Therefore, Palatine followed the emphasized portion of § 508.63 and filed notice of lis pendens to perfect its judgment lien in the Carlton Property.

It needs to be noted that Palatine has produced very little support for its interpretation of § 508.63. The only case potentially relevant to this issue cited in Palatine's brief is a Minnesota Supreme Court opinion dated 1887, and it does not mention § 508.63. The remaining support given consists of other Minnesota statutes and a brief excerpt from the legislative history of § 508.63. The main argument Palatine advances is that the plain language of § 508.63 validates its action. Additional research by the court has failed to reveal any case which indicates the correctness of Palatine's interpretation of § 508.63.

On matters involving undecided questions of state law, we grant deference to the district court. "We will overturn the district court's interpretations of [state] law only if we find them 'fundamentally deficient in analysis, without a reasonable basis, or contrary to a reported state-court opinion.'" *Cullum v. Mutual of Omaha Ins. Co.*, 840 F.2d 619, 621 (8th Cir.1988). Palatine's position is stated succinctly in its reply brief. "Palatine asserts not that the recording of the lis pendens creates a lien,

---

**3.** This statute also refers to Chapter 508A of the Minnesota Statutes Annotated. Chapter 508A is not relevant for purposes of this case, so any reference to it has been deleted.

but that the recording of the lis pendens perfected the interest claimed, a judgment lien, by placing all subsequent interest holders on notice." The question then arises, what created the lien if the filing of the lis pendens did not?

It is possible that the district court found that Palatine was arguing that its judgment against Olson created a judgment lien against the Carlton Property and that Palatine "perfected" the judgment lien by filing the notice of lis pendens. This position, however, could be viewed as conflicting with the statutes. Section 548.09 states that a judgment is not a lien on registered property, such as the Carlton Property, "unless *it* is also filed pursuant to section[ ] 508.63...." (Emphasis supplied.) The plain wording of § 548.09 requires *the judgment* to be filed with the registrar before a lien on registered property is created. The district court reasonably could have found that failure to register the judgment prevented a lien from being created.

The district court logically could have found that the language of § 508.63 permits Palatine to register the lis pendens with the registrar of titles if the lis pendens "is required by law to be filed or recorded in order to *create* or *preserve* any lien...." (Emphasis supplied.) A notice of lis pendens can preserve a preexisting lien. A judgment creditor who has a lien on registered property can register a notice of lis pendens with the registrar and have the lis pendens noted on the title of the property. The lis pendens gives notice of the lien to any subsequent purchaser and prevents that purchaser from being a bona fide purchaser who can avoid the lien. The district court reasonably could have found that this was not the situation in this case because Palatine did not have a lien which could be preserved by the lis pendens.

The district court also reasonably could have found that the filing of the lis pendens did not create a lien in this case. "The purpose of a lis pendens is to warn prospective purchasers that title to property is in litigation which impedes a property owner's right to free alienability of real estate." *Nelson v. Nelson*, 415 N.W.2d 694, 698 (Minn.Ct.App.1987). Even if filing a notice of lis pendens could possibly create a lien on registered property, an issue we do not decide here, we do not believe the filing in this case created a lien against the Carlton Property. In fact, Palatine has admitted as much in its brief and a letter to the bankruptcy court.

In summary, the bankruptcy court found that Palatine's judgment against Olson did not reach the Carlton Property because he never owned the property as required by § 548.09. The court also found that Palatine failed to establish a fraudulent conveyance of the Carlton Property from Olson to Strom. The district court assumed without deciding that Palatine's judgment against Olson attached to the Carlton Property in Strom's hands in accordance with § 548.09. However, the court noted that § 548.09 provides that a judgment must be registered according to § 508.63 to constitute a lien against registered property. The district court found that Palatine had failed to register its judgment against Olson, and so the court ruled that Palatine had no lien against the property. In its holding, the district court found that Palatine's registering of a notice of lis pendens on the title to the property was insufficient to create a lien on the property under § 508.63. We cannot say that the district court's statutory interpretation is "fundamentally deficient in analysis, without a reasonable basis, or contrary to a reported state-court opinion." *Cullum*, 840 F.2d at 621. The court's holding on this issue is therefore affirmed.

## III. ATTORNEY FEES AND COSTS

█ The district court found that the bankruptcy court abused its discretion by requiring Palatine to agree to bear Strom's attorney fees and costs before the bankruptcy court would vacate its dismissal of the case. The court's reasoning was based upon judicial opinions which granted only retroactive, rather than prospective, relief using Rule 60(b).

Rule 60(b) was intended to preserve 'the delicate balance between the sancti-

ty of final judgments ... and the incessant command of a court's conscience that justice be done in light of all the facts.' ... Thus, the Rule is intended 'to prevent the judgment from becoming a vehicle of injustice.' ... [T]he Rule is to be given a liberal construction and is to be construed liberally to do substantial justice.

*Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 515 (8th Cir.1984) *aff'd in part, rev'd in part* in *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 874 F.2d 550 (8th Cir.1989) (citations omitted).

Examining the bankruptcy court's decision to condition its Rule 60(b) relief for Palatine on Palatine's agreement to be potentially liable to Strom for her attorney fees convinces us that the bankruptcy court did not abuse its discretion. In its order, the court stated its concern with competing interests. On the one hand, Palatine wished to have its claim tried on the merits. On the other hand, the court saw little or no merit in Palatine's claim, and Strom's unsecured creditors would be forced to bear the expense of the trial. In a compromise, the court decided to reinstate the claim only if Palatine agreed to bear the expenses of Strom's attorney fees should Palatine fail to prevail. We cannot say that this decision, given the circumstances in which the court found itself, was an abuse of the court's discretion. We therefore reverse the district court's ruling as to the award of attorney fees and costs.

Although we are reinstating Strom's award for attorney fees and costs, we cannot determine from the record before us whether the entire $34,058.75 amount claimed by Strom is reasonable. For that reason we remand this issue to the bankruptcy court for a determination of a reasonable amount of attorney fees and costs to be awarded to Strom.