Filed 6/16/16  Calif. Valley Miwok Tribe v. Calif. Gambling Control CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA VALLEY MIWOK TRIBE, | D068909 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2008-00075326-CU-CO-CTL) |
| CALIFORNIA GAMBLING CONTROL COMMISSION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

Manuel Corrales, Jr.; Terry Singleton APC and Terry Singleton for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Sara J. Drake, Assistant Attorney General, and Neil D. Houston, Deputy Attorney General, for Defendant and Respondent.

Plaintiff California Valley Miwok Tribe (the Tribe) appeals from the trial court's award of costs in favor of defendant California Gambling Control Commission (the

Commission), following the Commission's successful summary judgment against the Tribe in its lawsuit seeking an order requiring the Commission to pay over the funds to the Tribe from the Indian Gaming Revenue Sharing Trust Fund (RSTF). The Tribe contends that it is protected by tribal sovereign immunity from incurring any obligation to pay costs to the prevailing defendant in a lawsuit that it initiated. As we will explain, the Tribe's position lacks merit, and accordingly we affirm the award of costs.

I

FACTUAL AND PROCEDURAL BACKGROUND

This matter returns to us for a fourth time. Our previous opinion, *California Valley Miwok Tribe v. California Gambling Control Com.* (2014) 231 Cal.App.4th 885 (*California Valley Miwok*) extensively reviewed the relevant factual and procedural background. We will assume the reader's familiarity with *California Valley Miwok*, and we thus proceed with a truncated summary.[1]

"[P]ursuant to the Indian Gaming Regulatory Act (18 U.S.C. § 1166 et seq.; 25 U.S.C. § 2701 et seq.), the State of California has entered into tribal-state gaming compacts with the various tribes in California authorized to operate gambling casinos (collectively, the Compacts). (See Gov. Code, §§ 12012.25-12012.53 [ratifying tribal-state gaming compacts].) The Compacts set forth a revenue-sharing mechanism under which tribes that operate fewer than 350 gaming devices share in the license fees paid by the tribes entering into the Compacts, so that each 'Non-Compact Tribe' in the state

---

[1] The Tribe and the Commission have both filed requests for judicial notice, which attach relevant documents from the history of this litigation. We grant both requests.

receives the sum of '$1.1 million per year.' (Compact, § 4.3.2.1.) . . . It is undisputed that the Tribe is a Non-Compact Tribe, as it operates no gaming devices and is federally recognized. [¶] . . . [¶] The Commission does not dispute that, like all Non-Compact Tribes, the Tribe is eligible for an annual $1.1 million payment under the terms of the Compacts." (*California Valley Miwok*, *supra*, 231 Cal.App.4th at pp. 888-889, fns. omitted.) The annual payment of $1.1 million to each Non-Compact Tribe is drawn from RSTF described in the Compacts, with the Commission administering the RSTF in its role as trustee. (*Id*. at p. 889.)

Because of a leadership and membership dispute within the Tribe, which is described at length in *California Valley Miwok*, the Commission began withholding the distribution of the RSTF funds to the Tribe. (*California Valley Miwok*, *supra*, 231 Cal.App.4th at pp. 889-896.) The Commission took the position that it lacked the authority to independently assess the legitimacy of a purported tribal leader or tribal leadership group, and instead chose to rely upon the assessment and conclusion of the Department of the Interior, acting through the Bureau of Indian Affairs (BIA), which was still in process. (*Id*. at pp. 889-890.) "As of March 6, 2013, the Commission was holding $8,763,000.99, exclusive of interest, of the RSTF funds payable to the Tribe." (*Id*. at p. 890.)

"The Tribe, as represented by [Silvia] Burley, filed this action against the Commission in January 2008. Against the Commission, the operative complaint seeks (1) a writ of mandate under Code of Civil Procedure section 1085; (2) an injunction; and (3) declaratory relief. All three causes of action seek the same fundamental relief,

3

namely an order requiring the Commission to pay over the RSTF funds to the Tribe, with Burley as its leader, to distribute according to her discretion." (*California Valley Miwok*, *supra*, 231 Cal.App.4th at p. 896.) Later, a competing tribal faction intervened in the action. (*Ibid*.)

After lengthy litigation, the trial court granted summary judgment in favor of the Commission and denied the Tribe's motion for judgment on the pleadings, concluding that the Commission was justified in suspending disbursement of the RSTF funds to the Tribe pending the BIA's recognition of an authorized representative of the Tribe. (*California Valley Miwok Tribe*, *supra*, 231 Cal.App.4th at p. 897.) In *California Valley Miwok* we affirmed the judgment in favor of the Commission. (*Id*. at p. 912.)

Our remittitur after issuing *California Valley Miwok* specified that the Commission was to recover costs. The Tribe filed a motion requesting that we recall the remittitur on the ground that the Tribe could not be ordered to pay costs due to its tribal sovereign immunity, and we denied the motion to recall the remittitur.

Based on the award of costs in the remittitur, the Commission filed a memorandum of costs in the trial court, which identified $5,665 in costs incurred as a result of a filing fee on appeal and the preparation of the clerk's transcript.[2]

---

[2]    Because the Commission is a public agency of the State of California, Government Code section 6103 applies, which provides that qualifying public agencies shall not be required to pay court filing fees or be charged for the cost of reporting services. Thus, the Commission did not actually *incur* the costs identified in its memorandum of costs. However, pursuant to Government Code section 6103.5, the Commission is required to seek recovery from the opposing party of costs that it would have incurred, unless they consist only of filing fees, and to pay the recovered costs to the

4

The Tribe filed a motion to strike costs. The Tribe argued that "[a]n entry of costs against the Tribe, and resulting in a money judgment, is not permitted by law, due to the Tribe's sovereign immunity."

After allowing the parties to submit supplemental briefing, the trial court issued an order that denied the motion to strike costs and awarded the Commission costs in the amount of $5,665. The trial court explained that "by bringing suit in California state court, [the Tribe] subjected itself to the jurisdiction of the court and waived tribal sovereign immunity." It further explained that the Tribe cited no authority that "provides for tribal sovereign immunity in an instance such as this where a tribe brings suit, is unsuccessful, and, following appeal, costs are awarded against the tribe." The Tribe appeals from the order awarding costs.

II

DISCUSSION

The issue presented for our review is whether the trial court erred in ordering the Tribe to pay the costs incurred on appeal given the Tribe's assertion of sovereign immunity from such an order.

A.    *Standard of Review*

Normally, "[w]e review an award of . . . costs by the trial court for abuse of discretion[,]" but "de novo review of an award is appropriate where the determination of whether the criteria for an award of . . . costs have been satisfied amounts to . . . a

clerk of the court. (Gov. Code, § 6103.5, subds. (a), (b).) The Commission accordingly filed the memorandum of costs here pursuant to Government Code section 6103.5.

5

question of law." (*Law Offices of Marc Grossman v. Victor Elementary School District* (2015) 238 Cal.App.4th 1010, 1013-1014.) Here, we are presented with a question of law, as "[i]n the absence of conflicting extrinsic evidence relevant to the issue, the question of whether a court has subject matter jurisdiction over an action against an Indian tribe is a question of law subject to our de novo review." (*Lawrence v. Barona Valley Ranch Resort & Casino* (2007) 153 Cal.App.4th 1364, 1369.) Accordingly, we apply a de novo standard of review in determining whether the trial court properly ordered the Tribe to pay costs.

B.     *The Tribe Waived Its Sovereign Immunity by Filing This Lawsuit*

The award to the Commission of the costs incurred on appeal was based on California Rules of Court, rule 8.278(a)(1), which provides (with exceptions not relevant here) that "the party prevailing in the Court of Appeal in a civil case . . . is entitled to costs on appeal."[3] The Tribe contends that this generally applicable rule does not apply to it because of the doctrine of tribal sovereign immunity. We accordingly turn to the doctrine of tribal sovereign immunity.

"Indian tribes are ' "domestic dependent nations" ' that exercise 'inherent sovereign authority.' " (*Michigan v. Bay Mills Indian Community* (2014) 572 U.S. ___ [188 L.Ed.2d 1071, 1082, 134 S.Ct. 2024, 2030].) "Among the core aspects of sovereignty that tribes possess . . . is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.' " (188 L.Ed.2d at p. 1083.) Thus, "[a]s a matter of federal law, an

_____

3      All further rule references are to the California Rules of Court.

6

Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." (*Kiowa Tribe v. Manufacturing Tech.* (1998) 523 U.S. 751, 754.) A tribe's waiver of its immunity " ' "cannot be implied but must be unequivocally expressed." ' " (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 58.)

When an Indian tribe initiates a lawsuit as a plaintiff, it consents to the jurisdiction of the court to adjudicate the lawsuit that it has filed. "[B]y initiating [a] lawsuit, the Tribe 'necessarily consents to the court's jurisdiction to determine the claims brought adversely to it.' " (*Rupp v. Omaha Indian Tribe* (8th Cir. 1995) 45 F.3d 1241, 1245; see also *U.S. v. State of Or.* (9th Cir. 1981) 657 F.2d 1009, 1014 [tribe that intervened in a lawsuit consented to the jurisdiction of the court and therefore waived its sovereign immunity, including assuming the risk it would be bound by an order it deemed adverse].) Thus, as our Supreme Court has noted, "tribal immunity does not extend to protection from the normal processes of the state court in which [the tribe] has filed suit." (*Three Affiliated Tribes v. Wold Engineering* (1986) 476 U.S. 877, 891 (*Three Affiliated Tribes*).)

As a limit on this rule, a tribe that files a lawsuit as a plaintiff does not waive its sovereign immunity from counterclaims against it. (*United States v. U.S. Fidelity Co.* (1940) 309 U.S. 506, 511-512; *Oklahoma Tax Comm'n v. Potawatomi Tribe* (1991) 498 U.S. 505, 509 ["a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe"].) However, sovereign immunity does not bar counterclaims in *recoupment* against an Indian tribe that files a lawsuit. (*Rosebud*

7

*Sioux Tribe v. A & P Steel, Inc.* (8th Cir. 1989) 874 F.2d 550, 552 ["when a sovereign nation such as an Indian tribe commences a lawsuit, ' "it waives immunity as to claims of the defendant which assert matters in recoupment — arising out of the same transaction or occurrence which is the subject matter of the government's suit" ' "].)

Here, the Tribe contends that an award of costs against it is the equivalent of an award on a counterclaim against it, and thus tribal sovereign immunity protects it from an order requiring it to pay costs in an unsuccessful lawsuit that it initiated as plaintiff. We disagree. As we have noted, our Supreme Court has observed that "tribal immunity does not extend to protection from *the normal processes of the state court* in which [the tribe] has filed suit." (*Three Affiliated Tribes*, *supra*, 476 U.S. at p. 891, italics added.) The provision in rule 8.278(a)(1) establishing that "the party prevailing in the Court of Appeal in a civil case . . . is entitled to costs on appeal" is part of *the normal processes of the state court*, not an affirmative claim for relief by the opposing party akin to a counterclaim.

To support its contention that sovereign immunity protects it from an award of costs, the Tribe primarily relies on an opinion from an appellate court in Oklahoma, *First Bank & Trust v. Maynahonah* (Okla. Civ. App. 2013) 313 P.3d 1044, 1057. That case is inapposite because the Indian tribe was not the plaintiff in the lawsuit. Specifically, in *Maynahonah* a bank filed a complaint in interpleader to determine which of three competing groups was authorized to withdraw funds from an account opened by a tribe, when each group purported to be the authorized business committee of the Apache Tribe of Oklahoma. (*Id*. at pp. 1045-1046.) The trial court ordered that the competing groups

8

"shall interplead" in the action and settle amongst themselves their respective rights to the funds. (*Id*. at p. 1047.) After the matter was resolved, the trial court ordered that the tribal group that obtained possession of the funds was required to pay the attorney fees and costs incurred by the bank in bringing the interpleader action. (*Id*. at pp. 1048-1049.) *Maynahonah* reversed the order requiring that the tribal group pay attorney fees and costs. As it explained, "sovereign immunity bars an interpleader action absent clear waiver" (*id*. at p. 1056), and the tribe did not clearly and expressly waive its sovereign immunity by merely complying with the trial court's order of interpleader in an action commenced by the bank (*id*. at p. 1057). Therefore, because no waiver occurred, the trial court was without jurisdiction to award attorney fees and costs to the bank. (*Ibid*.)

This action is nothing like *Maynahonah* because it is not an interpleader action and the Tribe was not *involuntarily* joined in the litigation. To the contrary, the Tribe is the *plaintiff* that instituted this action, and it therefore affirmatively chose to submit to the jurisdiction of the superior court. By affirmatively choosing to make itself a plaintiff in a litigation, the Tribe expressly waived its immunity and consented to all of the normal obligations that go along with participating as a plaintiff in a litigation. Those obligations include the payment of costs of suit if the lawsuit is unsuccessful. Therefore, we conclude that by filing this action, the Tribe expressly waived any tribal sovereign immunity that would protect it against a court order requiring that it pay costs to the party that it sued. (Cf. *In re PNP Holdings Corp.* (9th Cir. BAP 1995) 184 B.R. 805, 807 [Indian tribe creditor that filed an unsuccessful adversary proceeding in bankruptcy court

9

to determine a debt to be nondischargeable was not protected by tribal sovereign immunity from an order requiring it to pay attorney fees and costs to the debtor].)

C.    *The Provision in the Compacts Concerning the Limited Waiver of Sovereign Immunity for a Suit Arising Under the Compacts Is Not Applicable Here*

To support its argument that it did not consent to an award of costs against it by instituting this action as plaintiff, the Tribe also points to provisions in the Compacts between the State of California and the tribes authorized to operate gambling casinos in California.

Specifically, the Tribe relies on Section 9.4 of the Compacts, which provides for a limited waiver of sovereign immunity by the tribes entering into the Compacts. As relevant here, the Compacts state that in the event that a dispute between the State of California and a tribe entering into the Compacts is to be resolved in state or federal court under the dispute resolution provision in the Compacts, the tribes "expressly consent to be sued therein and waive any immunity therefrom that they may have provided that: [¶] (1) The dispute is limited solely to issues arising under this Gaming Compact; [and] [¶] (2) Neither side makes any claim for monetary damages (that is, only injunctive, specific performance, including enforcement of a provision of this Compact requiring payment of money to one or another of the parties, or declaratory relief is sought)."

The Tribe argues that (1) this part of the Compacts applies to it; and (2) because of the provision stating that the waiver of sovereign immunity does not apply in lawsuits seeking monetary damages, the Tribe has not waived its sovereign immunity from an award of costs, which it contends is a type of monetary damages.

10

We reject the Tribe's argument because limited waiver of sovereign immunity set forth in the Compacts does not apply here, as the Tribe is not a party to the Compacts and this lawsuit does not arise under the Compacts. As we explained in our 2010 opinion in this action (*California Valley Miwok Tribe v. California Gambling Control Commission* (Apr. 16, 2019, D054912) [nonpub. opn.]), although the Compacts provide that Non-Compact Tribes, such as the Tribe here, " 'shall be deemed third party beneficiaries' of the Compacts[] (Compacts, § 4.3.2(a)(i)[]),'' the Compacts also provide that generally the Compacts " 'shall not be construed to[] create any right on behalf of a third party to bring an action to enforce any of its terms.' (Compacts, § 15.1.)'' (*Ibid*.) We therefore determined that this action does *not* arise under the Compacts and that, instead, it is based on Government Code section 12012.90, which requires the Commission to make quarterly payments from the RSTF. (*California Valley Miwok Tribe v. California Gambling Control Commission*, *supra*, D054912.)

Because this action does not arise under the Compacts, the limited waiver of sovereign immunity for disputes arising under the Compacts has no application here.

D. *The Commission Has Not Conceded That Sovereign Immunity Bars an Award of Costs*

The Tribe's final argument is that the Commission purportedly has conceded that sovereign immunity bars an order requiring the Tribe to pay *costs incurred in the trial court*, and thus the Commission should be held to that concession with respect to *costs incurred on appeal*. As we will explain, the Tribe's argument fails because the Commission made no such concession.

11

As background to the Tribe's argument, when preparing the proposed judgment in the trial court, counsel for the Commission included proposed language awarding costs of suit in the trial court to the Commission. Counsel for the Tribe responded by objecting to the inclusion of the cost award in the proposed judgment. Specifically, counsel argued that tribal sovereign immunity barred the Commission from recovering costs against the Tribe, and counsel stated that he would approve the proposed judgment only if the paragraph awarding costs was omitted. Counsel for the Commission responded by agreeing to remove the reference to the recovery of costs without an explanation of why he was doing so, and the parties thereafter submitted the proposed judgment to the court.

In the trial court and again on appeal, the Tribe contends that the Commission waived its ability to argue that sovereign immunity does not bar an award of costs here, as the Commission consented to the Tribe's request to delete the award of costs from the trial court judgment when the Tribe raised the sovereign immunity argument. The Tribe argues that if the Commission conceded that an award of costs incurred *in the trial court* were barred by tribal sovereign immunity, that concession should also apply to an award of costs incurred *on appeal*.

However, the record does not establish that the Commission ever agreed to the Tribe's position that tribal sovereign immunity barred an award of costs incurred in the trial court. Indeed, as the Commission pointed out in the trial court, it agreed to remove the award of costs from the proposed judgment because "its recoverable costs in the trial

12

court were de minimus and the Commission wished to expedite the entry of judgment."[4]

Nothing in the record establishes otherwise, and thus there is no indication of a concession by the Commission on the sovereign immunity issue.

## DISPOSITION

The trial court's order denying the motion to strike costs and awarding costs in the amount of $5,665 to the Commission is affirmed.


IRION, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.

---

4    As the Commission explains, the only recoverable cost in the trial court was the Commission's initial appearance fee, which the Commission was not required to seek to recover from the opposing party under Government Code section 6103.5, subdivision (b). In contrast, the costs on appeal include a large amount associated with the preparation of the clerk's transcript.